**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **No. 1:14-cr-00070** |
| | : | |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **MARC HERNANDEZ, <u>et</u> <u>al.</u>,** | : | |
| **Defendants** | : | |

## MEMORANDUM

On October 14, 2015, the Court verbally denied Defendants' joint motion <u>in</u> <u>limine</u>. (Doc. No. 802.)  This memorandum further details the basis of that ruling.

On October 12, 2015, Defendants jointly filed a motion <u>in</u> <u>limine</u>, together with a supporting brief, seeking to exclude all evidence and testimony related to a November 17, 2012 altercation on Loucks Road in York, Pennsylvania, that resulted in the death of Christen Latham. (Doc. Nos. 802, 803.)  Defendants argue that the evidence should be excluded because it is either altogether irrelevant under Federal Rule of Evidence 402, or because under Federal Rule of Evidence 403, its probative value is substantially outweighed by the danger of prejudice or confusion.  (Doc. No. 802 ¶¶ 6-8, 12.) The motion  also states that on October 8, 2015, the Government notified defense counsel of its intention to introduce evidence and testimony at trial related to the incident.  (<u>Id.</u>  ¶ 5.)

The Government filed a brief in opposition on October 13, 2015, arguing that the incident is an intrinsic part of the alleged conspiracy and criminal enterprise, so the evidence should be held admissible.  (<u>See</u> Doc. No. 804.)  According to the Government, even if the Court considers evidence of the incident as mere evidence of the conspiracy and enterprise, rather than as evidence of an independent overt act or racketeering act, evidence of the incident is intrinsic to

the charges and should be admitted.  In the Government's view, a finding that evidence of the

Latham homicide is intrinsic should end the inquiry.  Indeed, it is well settled that conduct that

would otherwise be inadmissible under Federal Rule of Evidence 404(b) may be admitted as

proof of conduct charged in the indictment.  See United States v. Green, 617 F.3d 233, 248-49

(3d Cir. 2010) ("If uncharged misconduct directly proves the charged offense, it is not evidence

of some 'other' crime.") (quoting United States v. Gibbs, 190 F.3d 188, 217-18 (3d Cir. 1999)).

However, the Court cannot agree that an indictment charging the acts at issue ends all inquiry.  It

cannot stand that allegations in an indictment, no matter how fanciful, will open the door to the

admission of highly damaging testimony that would otherwise be inadmissible.  See United

States v. Hedgepeth, 434 F.3d 609, 612 (3d Cir. 2006) ("[T]he court may strike surplusage from

the indictment or information when it is both irrelevant (or immaterial) and prejudicial.").

According to Defendants, no part of the Government's proposed proffer is relevant to the

charged offenses because the incident is unrelated to the activities of the alleged criminal

enterprise or drug trafficking activities alleged in the indictment.  (Doc. No. 802 ¶¶ 4, 8-11.)

Defendants' description of the evidence suggests that the testimony at issue is highly prejudicial,

and is properly evaluated by the Court for a determination of whether the testimony at issue

supports the indictment and qualifies for admission as intrinsic.  To this end, the Court has

directed that the Government make available for the Court's review the discovery provided to

Defendants.  (See Doc. No. 806.)

The discovery materials reveal that witnesses will place defendants Hernandez, Kelly,

Cruz, Schueg, and Sistrunk at the scene of the homicide.  Witnesses will describe a disagreement

between the deceased and defendant Hernandez that resulted in a physical altercation inside the

MoMo's restaurant, and then spilled into the parking lot.  Once outside, several co-conspirators

named in the indictment "jumped" Christen Latham, attacking him as he lay prone.  At least one

witness will identify defendant Kelly as a man who stood nearby with his hand in his pocket.

The witness believed he had a gun.

In its proffer to the Court, the Government maintained that it will prove the allegations of

paragraph 31 of the indictment, including the allegation that the members of the RICO

conspiracy "assisted" defendant Hernandez in his physical altercation with Latham because of

their obligation to do so as co-conspirators.  The Government also proffers that it will prove the

substantive allegations of paragraph 31 as an act of racketeering, in that through witness

testimony and strong circumstantial evidence, the Government will prove that co-conspirator

Kelly murdered Latham in the course and in furtherance of the conspiracy.

Based on the Government's proffer the Court concludes that the Government will

produce convincing circumstantial evidence that co-defendant Kelly shot Latham to death,

following an altercation with defendant Hernandez in which he was "jumped" by co-conspirators

of Hernandez.  As such, the incident is properly charged as a part of the racketeering and drug

distribution conspiracy in the indictment.  Because the incident is properly charged, the Court

concludes that evidence of the incident is unquestionably relevant.[1]

---

[1] The Court questions if any amount of prejudice resulting from direct evidence of the event could justify its exclusion.  See United States v. Irizarry, 341 F.3d 273, 296 (3d Cir. 2003) ("Thus, if the predicate conspiracy relates to the affairs of a RICO enterprise, it can be charged as part of that enterprise's pattern of racketeering activity . . . .").  Homicides and overt acts taken in furtherance of an underlying drug conspiracy are both racketeering acts for present purposes.  See id.; see also 18 U.S.C. § 1961(1).  The credibility and weight of the evidence related to the incident, then, is a question for the jury and not a question of evidence for the Court.

In this Circuit, evidence is intrinsic if it "directly proves" the charged offense.  United States v. Green, 617 F.3d 233, 248-49 (3d Cir. 2010).  In addition, the scope of intrinsic evidence is by nature broader when the indictment charges a conspiracy.  United States v. Haas, 184 F. App'x 230, 233 (3d Cir. 2006) (citing United States v. Cross, 308 F.3d 308, 320 (3d Cir. 2002)). Here, the evidence of the incident tends to establish that the charged defendants associated with each other and engaged in violent activities due to that association.  Proof of concerted and violent action on a given occasion, even absent a more direct connection to the illicit activities of the enterprise, directly proves the conspiracy and enterprise's existence and pattern of activity under the Government's theory.  Consequently, the evidence is intrinsic.

Finally, the Court finds that the evidence's great probative value is not substantially outweighed by the dangers addressed in Federal Rule of Evidence 403.[2]  Even absent a finding that the evidence is intrinsic, the testimony is probative of the Government's premise that a key component of the RICO conspiracy is the requirement that members support one another by joining in their feuds and physically engaging as necessary.  The testimony also directly implicates lead members of the alleged enterprise as actors in a specific violent encounter, and tends strongly to establish the continuity of the alleged enterprise.  See United States v. Ligambi, 890 F. Supp. 2d 564, 571 (E.D. Pa. Sept. 4, 2012) (refusing to strike continuity evidence as surplusage).  The prejudicial effect that will result from evidence of a previously uncharged

---

[2] Defendants' motion seeks exclusion of the entire body of evidence related to the Latham homicide.  (Doc. No. 802.)  Defendants do not argue, and the Court does not find based on its review of the documents, that any one piece of the Government's evidence regarding the homicide is singularly objectionable.  Rather, the relevance of each piece of the Government's proffer turns on the relationship of the incident itself to the charged enterprise and conspiracy. Consequently, the Court addresses the relationship of the incident to the allegations in the indictment, rather than any individual piece of the Government's evidence.

homicide is mitigated by the evidence already presented at trial.  There is little danger that the

evidence unfairly introduces a propensity on the part of the alleged shooter to engage in the <u>drug</u>

conspiracy and enterprise.  Any prejudice to uninvolved co-defendants is minimal.[3]  <u>See</u> <u>United</u>

<u>States v. Jones</u>, 566 F.3d 353, 364-65 (3d Cir. 2009) (distinguishing <u>United States v. Murray</u>,

103 F.3d 310 (3d Cir. 1997), and <u>United States v. Hans</u>, 738 F.2d 88 (3d Cir. 1984)).  In

weighing the prejudicial effect the Court has the benefit of over three weeks of testimony.

During those weeks, the jury has heard extensive evidence of Defendants' and their alleged co-

conspirators' drug trafficking and gun possession, gang membership, multiple shootings directed

at their rivals, shootouts on public streets involving feuding rivals in which children are shot and

even killed, and evidence of multiple murders.  Any prejudice is diminished when considered in

the context of other evidence presented during the course of this trial.  In sum, the Court finds

that evidence related to the November 17, 2012 altercation is relevant, and that its probative

value is not outweighed by the risks addressed in Federal Rule of Evidence 403.


   S/ Yvette Kane
  Yvette Kane, District Judge
  United States District Court
  Middle District of Pennsylvania

---

[3] The alleged shooter, defendant Kelly, is also charged in the indictment with a firearms conspiracy.  (Doc. No. 78 ¶¶ 43-44.)  That charge stems from a series of weapons recovered during physical searches more than a year after the Latham homicide.  While cognizant of the potential for prejudice, the Court finds that any unfair prejudice resulting from defendant Kelly's possession of a weapon during the Latham homicide does not substantially outweigh the probative value of evidence of the altercation.  Defendant may request a limiting instruction to further mitigate any resulting prejudice.