IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROSCOE VILLEGA,         : | | |
|     Petitioner         : | No. 1:14-cr-00070-3 | |
|                        : | | |
|     v.                 : | (Judge Kane) | |
|                        : | | |
| UNITED STATES OF AMERICA, : | | |
|     Respondent         : | | |

## MEMORANDUM

Before the Court is Petitioner Roscoe Villega ("Petitioner")'s motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("§ 2255 motion") (Doc. No. 1754) and his related motion for leave to amend his § 2255 motion under Federal Rule of Civil Procedure 15(c)(1)(B) (Doc. No. 1858) and his motion for "update status" (Doc. No. 1867). For the following reasons, the Court will grant Petitioner's motion for leave to amend, but will deny Petitioner's § 2255 motion and motion for status.

## I.    BACKGROUND

In 2014, a federal grand jury returned a superseding indictment charging Petitioner and twenty (20) codefendants (collectively, "Codefendants," and with Petitioner, "Defendants") with racketeering conspiracy, 18 U.S.C. § 1962 ("RICO") (Count I), conspiracy to distribute a controlled substance, 21 U.S.C. 846 (Count II), and distribution of a controlled substance (Count III), 21 U.S.C. § 841(a). (Doc. No. 78.) Four Defendants were additionally charged with firearm- related offenses, including possession of a firearm in furtherance of a drug-trafficking crime (Count V) and, as to Petitioner, conspiracy of the same (Count VI). (Id.)

The charges stemmed from Defendants' association with a violent street gang—the Southside gang, an affiliate of the Bloods, a national street gang—to perpetrate drug trafficking and other violent acts. (Id.) The conspiracy took place over a twelve-year period and involved

deadly gang violence. (Id.) Nine (9) defendants entered pleas of guilty. (Doc. Nos. 1380, 1493, 1542, 1550–51, 1560, 1575, 1585.) Twelve (12), including Petitioner, proceeded to a joint jury trial. (Doc. Nos. 974–1027.) The jury found all twelve guilty, in late 2015, of one or more charges. (Doc. Nos. 911–34.) As to Petitioner, the jury found him guilty of RICO (Count I) and two drug counts involving 5 kilograms or more of cocaine and 280 grams and more of crack cocaine, heroin, and marijuana (Counts II–III). (Doc. No. 915.)[1]

Petitioner's presentence investigation report ("PSR") suggested a combined adjusted offense level of 48—capped at 43 pursuant to U.S.S.G. ch. 5, pt. A, cmt. n. 2—and a criminal history category of VI due to a total criminal history score of 19, calculating Petitioner's guideline range as life in prison.[2] (PSR ¶¶ 262, 265, 276, 299.) The PSR also determined that Petitioner was a career offender. (Id. ¶ 276.) As to statutory sentencing ranges, the PSR concluded that Petitioner faced maximum terms of life imprisonment on all Counts. (Id. ¶ 298.)

Two aspects of the PSR are particularly relevant to Petitioner's § 2255 motion. First, the PSR enumerated "underlying racketeering activity" that resulted in a higher statutory maximum and guideline range for the RICO count, as follows:

> The instant RICO offense encompasses four separate underlying racketeering categories, and 109 racketeering activities (RA) as referenced in The Offense Conduct section of this report. A defendant need not have been charged with the "underlying racketeering activity," and need not have been personally involved in the activity as long as the conduct was reasonably foreseeable to him in furtherance of the RICO enterprise. Southside was known to use threats and violence, and had access to firearms to protect their territory. Since this activity was known to all those involved, all of underlying activity noted by an "RA" was reasonably foreseeable to the participants beginning when they personally

---

[1] On the Government's motion at the end of its case in chief, the Court dismissed Count VI as to Petitioner and Defendant Kelly. (Doc. No. 880 at 1.)

[2] This life guideline range related to Petitioner's convictions on Counts I–III and VI. See (PSR ¶ 360). The guideline range regarding Count V was sixty (60) months. See (id.).

joined Southside.

See (id. ¶ 211) (emphasis in original).  The PSR enumerated the relevant racketeering activities, e.g., first-degree murder, attempted first-degree murder, robbery, and narcotics possession/distribution.  (Id. ¶¶ 212–60.)

Although Petitioner initially contested most of the guideline calculations, at sentencing, the parties agreed that the Court should rely on Petitioner's classification as a career offender for purposes of the guideline calculation for an offense level of 37 and that Petitioner's criminal history score should be VI, resulting in a guideline range of 360 months to life imprisonment. (Doc. Nos. 1378; 1414 at 3–4, Tr. 3:13–4:8.)  The Court ultimately sentenced Petitioner to 300 months' imprisonment on each count, to be served concurrently, and a supervised release term of five (5) years.  (Doc. No. 1343 at 3–4.)  The Court imposed a below-guideline sentence crediting Petitioner the time that Petitioner served on prior charges committed during the time of the instant offenses.[3]  Additionally, the Court found that Petitioner "was not personally involved in violence and he is less culpable than some of the other co-defendants."  (Doc. No. 1378 at 3–4.)[4]

Petitioner and nine Codefendants who proceeded to trial appealed their convictions and sentences to the United States Court of Appeals for the Third Circuit ("Third Circuit").  See United States v. Williams, 974 F.3d 320, 338 (3d Cir. 2020).  The Third Circuit grouped their claims on appeal into roughly five categories: (1) Sixth Amendment challenges to this Court's

---

[3] At sentencing, the parties determined that Petitioner had served 763 days in prison prior to sentencing—a little over two years—on two other drug charges.  (Doc. No. 1414 at 2–3, Tr. 2:11–3:12.)

[4] During sentencing, the Court asked the Government to provide the sentences of the other Defendants at sentencing to impose a lesser sentence on Petitioner.  (Doc. No. 1414 at 15 – 18, Tr: 15:19 – 18:13.)  The Court also noted that Petitioner, to the Court's recollection, "was never implicated in any [deaths related to the conspiracy], nor is there a direct link with him to the violence that occurred in the case."  (Id. at 20, Tr: 20:16–25.)

closure of the courtroom to the public during voir dire; (2) challenges to the Court's in camera disposition of a challenge asserted under Batson v. Kentucky, 476 U.S. 79 (1986); (3) evidentiary challenges relating to motions to suppress evidence recovered from their residences under search warrants; (4) challenges to the sufficiency of evidence at trial; and (5) challenges to their sentences based on alleged procedural defects.  See id. at 335–36.  While affirming all ten Defendants' judgments of conviction, and based on the Government's concession, the Third Circuit partially vacated the judgments of sentence of eight Defendants "as to the assessment of police overtime costs," vacated the judgment of sentence of one of those eight Defendants—Hernandez—in full to permit him an opportunity to make a statement or present mitigation evidence in connection with his sentencing proceedings, and vacated another of the same group of Defendants—Scheug—as to the assessment of restitution, fines, and costs.  See id. at 375, 377, 380; see also (Doc. Nos. 1637, 1637-1, 1638, 1638-1, 1639, 1639-1, 1640, 1640-1, 1641, 1641-1, 1642, 1642-1, 1643, 1643-1, 1644, 1644-1, 1645, 1645-1, 1646, 1646-1).

In October 2021, this Court issued orders effectuating the vacatur of five Defendants' judgments of sentence as to the assessment of police overtime costs and entered corresponding amended judgments.  (Doc. Nos. 1684–85 (Cruz), 1687–88 (Kelly), 1690–91 (Petitioner), 1693–94 (Atkinson), 1696–97 (Sistrunk).)  In December 2021, following sentencing hearings, the Court resentenced Defendants Hernandez and Schueg and issued amended orders regarding their judgments of sentence.  (Doc. Nos. 1705, 1709 (Schueg), 1711–12 (Hernandez).)[5]

On appeal, Petitioner, along with Rice, Eatmon, and Kelly, challenged this Court's drug-quantity attributions pursuant to the guideline's relevant-conduct provision.  See Williams, 974

---

[5]  An amended judgment was not entered as to Defendant Eatmon, whose judgment of sentence was ordered vacated as to the police overtime costs, because his original judgment did not include such costs.  See (Doc. No. 1504).

F.3d at 378. The Third Circuit rejected their argument and specifically as to Petitioner, the panel noted that:

> [Petitioner] also seeks to challenge his offense level on this ground, pointing out that the District Court did not rule on his objections regarding drug quantity, a dangerous-weapon enhancement, and relevant conduct for the RICO conspiracy. But there is good reason for that: [Petitioner]'s trial counsel and the Government agreed, and represented to the District Court at the sentencing hearing, that the baseline would be an offense level of 37, which, with a criminal history category of VI, resulted in a Guidelines range of 360 months to life imprisonment. [Petitioner]'s counsel thereafter raised no objections to the calculation, and the District Court applied no additional enhancements. The ultimate sentence was below the agreed-upon range. Contrary to [Petitioner]'s representations on appeal, it is clear that he waived any challenges to his offense level. See, e.g., United States v. Ward, 131 F.3d 335, 342–43 (3d Cir. 1997).

See id. at 378 n.43.

Petitioner filed his § 2255 motion in October 2022 with an accompanying brief (Doc. Nos. 1754–55) and subsequently filed a Notice of Election—in response to the Court's Miller notice—indicating that he wished to have the motion ruled on as filed (Doc. No. 1786). The Government filed a brief in opposition in December 2022. (Doc. No. 1813.) Petitioner did not file a reply brief. On June 27, 2023, Petitioner filed his also-pending motion for leave to amend his § 2255 motion. (Doc. No. 1858.) Several months later, on September 6, 2023, Petitioner filed a motion for "update status," which the Court construes as a motion for status. (Doc. No. 1867.) The Government did not file a brief in opposition to the motion for leave to amend or the motion for status. Having been fully briefed, Petitioner's § 2255 motion is ripe for disposition, as are his motions for leave to amend and motion for status.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255(a), a federal prisoner may file a motion requesting that the sentencing court vacate, set aside, or correct his sentence on the basis "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the [C]ourt was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." See 28 U.S.C. § 2255(a). However, § 2255 does not afford a remedy for all errors that may have been made at trial or during sentencing. See United States v. Essig, 10 F.3d 968, 977 n.25 (3d Cir. 1993) (citing United States v. Addonizio, 442 U.S. 178, 185 (1979)). Rather, § 2255 is implicated only when the alleged error raises "a fundamental defect which inherently results in a complete miscarriage of justice." See Addonizio, 442 U.S. at 185. Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner has one year from the time his conviction becomes final to file a § 2255 motion. See 28 U.S.C. § 2244.

### III.    DISCUSSION

#### A.    Petitioner's Claims Concerning his Sentencing Calculation

Petitioner's § 2255 motion appears to challenge his career offender designation and calculation of the relevant conduct that resulted in his sentence of 300 months' imprisonment. See infra. While Petitioner's brief in support of his § 2255 motion is less clear in terms of the arguments he seeks to advance, see (Doc. No. 1755), the Court has construed his motion and briefing liberally and, in any event, Petitioner's motion for leave to amend (Doc. No. 1858) identifies his designation as a career offender and sentence calculation as a basis of his § 2255 motion. On that basis, the Court will grant Petitioner's motion for leave to amend. (Doc. No. 1858.)

As noted by the Government, Petitioner's brief "strings together summaries of different

bodies of law related to the topics of the modified categorical approach, qualifying predicate convictions, and sentencing guideline calculations." See (Doc. No. 1813 at 5).[6] Petitioner provides the procedural history of the case and argues that he should not have been classified as a career offender because his convictions under Pennsylvania and New York state law are broader than the federal law. (Doc. No. 1755 at 13–21, 24–35.)[7] He also claims that this Court erred by "failing to make a determination of the Petitioner's relevant conduct," and that this Court should have made "the proper individualized assessment of [Petitioner]'s conduct" at sentencing. (Id. at 35–37, 41.) In his motion for leave to amend, Petitioner asserts that, due to changes in sentencing, he would be sentenced to a lower guideline range if he had been sentenced today and that he would not have been sentenced as a career offender. (Doc. No. 1858 at 1– 2.) In response, the Government states that:

> [t]he importance of finality is particularly evident in this case. The government was prepared to proceed with proof that [Petitioner] was responsible for a guideline offense level of 43 and guideline range of life in prison. However, in the interests of finality, the government agreed to resolve these issues, with the understanding that with the reduced sentencing range of 360 months to life in prison all litigation on these issues would be concluded.

(Doc. No. 1813 at 6.) The Government argues that collateral review does not provide relief for sentencing guideline errors and that Petitioner has not satisfied one of the two exceptions—the sentencing error resulted in "an omission inconsistent with the rudimentary demands of fair

---

[6] Specifically, Petitioner's brief includes a discussion of different states' application of the Armed Career Criminal Act of 1984 ("ACCA") as to career offenders and predicate offenses. (Doc. No. 1755 at 1–9.) He also discusses the Controlled Substances Act ("CSA") broadly. (Id. at 9–13.)

[7] At one point in his filing, Petitioner states that "[t]oday, it would be ineffective assistance of counsel for an attorney to allow imposition of the career offender enhancement based on inchoate drug priors without an objection," but Petitioner does not appear to make an ineffective assistance of counsel claim instead claiming that the Court miscalculated his offense level and sentencing guidelines based on his career offender designation. (Doc. No. 1755 at 27.)

7

procedure" or that the error amounted to a "miscarriage of justice." (Id. at 8.)

Having considered Petitioner's arguments, the briefing of the parties, and the record of these criminal proceedings, the Court concludes that Petitioner's sentencing guideline claims are meritless, for several reasons. First, the Court concludes that Petitioner waived these claims by agreeing to a lower offense score and thus a lower guideline range at the time of sentencing. (Doc. No. 1414 at 3–4, Tr. 3:13–4:25.) As noted by the Government, the Third Circuit rejected Petitioner's sentencing guideline challenge on direct appeal on the basis of Petitioner's waiver, stating as follows:

> [Petitioner] also seeks to challenge his offense level on this ground, pointing out that the District Court did not rule on his objections regarding drug quantity, a dangerous-weapon enhancement, and relevant conduct for the RICO conspiracy. But there is good reason for that: [Petitioner]'s trial counsel and the Government agreed, and represented to the District Court at the sentencing hearing, that the baseline would be an offense level of 37, which, with a criminal history category of VI, resulted in a Guidelines range of 360 months to life imprisonment. [Petitioner]'s counsel thereafter raised no objections to the calculation, and the District Court applied no additional enhancements. The ultimate sentence was below the agreed-upon range. Contrary to [Petitioner]'s representations on appeal, it is clear that he waived any challenges to his offense level. See, e.g., United States v. Ward, 131 F.3d 335, 342–43 (3d Cir. 1997).

See Williams, 974 F.3d at 378 n.43.

Second, the Third Circuit's consideration of Petitioner's sentencing guideline challenge provides yet another basis to reject Petitioner's claim because it is settled law that "issues resolved in a prior direct appeal will not be reviewed again by way of a § 2255 motion . . . ." See United States v. Travillion, 759 F.3d 281, 288 (3d Cir. 2014). This rule embodies the "law-of-the-case doctrine, which provides that 'when a court decides upon a rule of law, the decision should continue to govern the same issues in subsequent stages in the same case.'" See United States v. Thomas, 750 F. App'x 120, 124 (3d Cir. 2018) (unpublished) (quoting Farina v. Nokia Inc., 625 F.3d 97. 117 n.21 (3d Cir. 2010)) (citing United States v. DeRewal, 10 F.3d 100, 105

8

n.4 (3d Cir. 1993)).

Finally, assuming <u>arguendo</u> that Petitioner did not waive his sentencing guideline challenge and the law of the case did not prevent reconsideration of the issue, the Court concludes that, under applicable Third Circuit precedent, Petitioner's sentencing guideline challenge is not cognizable in connection with a § 2255 motion. A § 2255 motion does not provide an avenue for relief from sentencing guideline errors, except under two circumstances. <u>See</u> <u>United States v. Folk</u>, 954 F.3d 597, 602 (3d Cir. 2020). The first is where the sentencing error results in "an omission inconsistent with the rudimentary demands of fair procedure." <u>See</u> <u>Folk</u>, 954 F.3d at 602 (quoting <u>United States v. Timmreck</u>, 441 U.S. 780, 783 (1979)). The second is where the sentencing error is a "fundamental defect that inherently results in a complete miscarriage of justice." <u>See</u> <u>id.</u> at 604. The Court agrees with the Government that Petitioner cannot argue that the "rudimentary demands of fair procedure" were not employed in his case when he negotiated and received the benefit of a favorable resolution of a guideline dispute. Similarly, Petitioner's sentence cannot be considered a "complete miscarriage of justice" where, after weighing the circumstances surrounding Petitioner's conviction and previous time incarcerated, the Court sentenced him to 300 months' imprisonment—a below-guideline sentence.

Accordingly, for all of the foregoing reasons, the Court will deny Petitioner's § 2255 motion. Because the Court will deny Petitioner's § 2255 motion, the Court will also deny Petitioner's motion for "update status" (Doc. No. 1867), construed as a motion for status, as moot.

### B. Evidentiary Hearing

9

Section 2255(b) advises that a petitioner may be entitled to a hearing on his motion. The decision to hold a hearing is wholly within the discretion of the district court. See Gov't of V.I. v. Forte, 865 F.2d 59, 62 (3d Cir. 1989). If "the files and records of the case conclusively show that the prisoner is entitled to no relief," the Court need not hold a hearing. See 28 U.S.C. § 2255(b). Here, even assuming arguendo that Petitioner's sentencing guideline challenge is not barred by waiver and the law of the case, Petitioner's claim is not cognizable in connection with a § 2255 motion. Accordingly, the Court finds no reason to hold an evidentiary hearing in this matter.

      **C.**      **Certificate of Appealability**

In proceedings brought under § 2255, a petitioner cannot appeal to the circuit court unless a certificate of appealability ("COA") has been issued. A court may not issue a COA unless "the applicant has made a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003). Here, the Court concludes that jurists of reason would not find the disposition of this case debatable, and the Court will not issue a COA.

**IV.**      **CONCLUSION**

For the foregoing reasons, the Court will grant Petitioner's motion for leave to amend Petitioner's § 2255 motion (Doc. No. 1858), but will deny Petitioner's § 2255 motion (Doc. No. 1754) without an evidentiary hearing and will not issue a COA. The Court will deny Petitioner's motion for "update status" (Doc. No. 1867), construed as a motion for status, as moot. An

appropriate Order follows.

                                                   s/ Yvette Kane
                                               Yvette Kane, District Judge
                                               United States District Court
                                               Middle District of Pennsylvania